# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| THOMAS N. SIMSTAD and | ) | |
| MARLA K. SIMSTAD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:07-CV-407-TS |
| | ) | |
| GERALD SCHEUB, NED KOVACHEVICH, | ) | |
| WILLIAM LAIN, RICK NIEMEYER, in their | ) | |
| official and individual capacities, | ) | |
| LAKE COUNTY, INDIANA, | ) | |
| NORTHERN INDIANA PUBLIC SERVICE | ) | |
| COMPANY, NISOURCE, INC., | ) | |
| NISOURCE CORPORATE SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss Pursuant to Federal Rule of Civil

Procedure 12(b) [ECF No. 34], filed by Defendants Gerald Scheub, Ned Kovachevich, William

Lain, Rick Niemeyer, and Lake County, Indiana (referred to collectively as the Lake County

Defendants), and a Motion to Dismiss [ECF No. 64], filed by Northern Indiana Public Service

Company, NiSource, Inc., and NiSource Corporate Services, Inc. (referred to collectively as the

NIPSCO Defendants).

## BACKGROUND

On November 15, 2007, the Plaintiffs, Thomas N. and Marla K. Simstad, filed their

Complaint [ECF No. 1] alleging the Defendants abridged their speech rights, engaged in

racketeering activity, and illegally conspired against the Plaintiffs. On April 9, 2008, the

Plaintiffs filed a First Amended Complaint [ECF No. 31], which sets forth the following eleven

counts: (1) abridgment of speech against Defendants Scheub, Kovachevich, Lain, Niemeyer, and Lake County, Indiana (Count I); (2) conspiracy under 42 U.S.C. § 1983 against Defendants Scheub, Kovachevich, Lain, Niemeyer, Lake County, Indiana, and NIPSCO (Count II); (3) failure to intervene against Defendants Scheub, Kovachevich, Lain, and Niemeyer (Count III); (4) racketeering under 18 U.S.C. § 1962(c) against Defendants Scheub, Kovachevich, Lain, and Niemeyer (Count IV); (5) racketeering and conspiracy under 18 U.S.C. § 1962(d) and Indiana law against Defendants Scheub, Kovachevich, Lain, Niemeyer, and NIPSCO (Count V); (6) violations of Article I, §§ 1, 9, and 31 of the Indiana Constitution against Defendants Scheub, Kovachevich, Lain, Niemeyer, and Lake County, Indiana (Count VI); (7) illegal conspiracy under 18 U.S.C. §§ 241, 242 and 42 U.S.C. § 1983 and Indiana law against all Defendants (Count VII); (8) negligence per se against the NIPSCO Defendants (Count VIII); (9) tortious interference with contractual, business, and/or services interests against all Defendants (Count IX); (10) emotional distress caused by reckless, intentional, and/or incident to breaches of a legal duty against all Defendants (Count X); and (11) violation of equal protection against Defendants Scheub, Kovachevich, Lain, Niemeyer, and Lake County, Indiana (Count XI). The Plaintiffs are real estate developers who invested in and were seeking to develop real estate in Lake County, Indiana. In this lawsuit, they claim that the Defendants unlawfully blocked and impeded the Plaintiffs' ability to develop real estate by conspiring together to violate the Plaintiffs' rights and damage the Plaintiffs' business and property interests. The Plaintiffs believe that political bias, nepotism, and personal gain lie behind the actions taken by the Defendants, and they seek equitable relief, compensatory damages, punitive damages, treble damages, costs, and attorney's fees.

On April 21, 2008, the Lake County Defendants filed their Motion to Dismiss [ECF No. 34] and their Memorandum of Law in Support [ECF No. 35]. They seek dismissal of the Plaintiffs' case pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). On May 9, the Plaintiffs filed their Brief in Opposition [ECF No. 48], which the Plaintiffs refiled with some modifications on July 1 [ECF No. 59]. On May 30, the Lake County Defendants filed their Reply Brief [ECF No. 53]. On July 22, the NIPSCO Defendants filed their Motion to Dismiss [ECF No. 64] and their Brief in Support [ECF No. 65]. They seek dismissal of Counts II, V, VII, VIII, IX, and X pursuant to Rule 12(b)(6), and they incorporate by reference the filings of the Lake County Defendants. On August 20, the Plaintiffs filed their Response [ECF No. 73], and on September 5, the NIPSCO Defendants filed their Reply Brief [ECF No. 77].

On November 13, the Court conducted a telephonic motion hearing and permitted supplemental briefing by the parties. On December 1, the Plaintiffs filed a supplemental Brief [ECF No. 82]. On December 17, the Lake County Defendants filed a Response [ECF No. 85], and the NIPSCO Defendants filed a Supplemental Brief [ECF No. 86]. On January 13, 2009, the Plaintiffs filed their first Notice of Supplemental Authority [ECF No. 89]. On February 11, the Plaintiffs filed their second Notice of Supplemental Authority [ECF No. 90]. On February 20, the Plaintiffs filed their third Notice of Supplemental Authority [ECF No. 91]. On April 27, the Plaintiffs filed their fourth Notice of Supplemental Authority [ECF No. 94]. On April 28, the Lake County Defendants filed their first Notice of Supplemental Authority [ECF No. 95], to which the Plaintiffs filed a Response [ECF No. 96] on May 1. On May 6, the NIPSCO Defendants filed a Joinder [ECF No. 97], indicating that they joined in the Lake County Defendants' Notice of Supplemental Authority. On June 9, the Plaintiffs filed their fifth Notice

of Supplemental Authority [ECF No. 98]. On June 10, the NIPSCO Defendants filed their first

(excluding their Joinder) Notice of Supplemental Authority [ECF No. 99]. On November 20, the

NIPSCO Defendants filed their second Notice of Supplemental Authority [ECF No. 104].


**MOTION TO DISMISS STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of the complaint, not the merits of the case. To state a claim under the federal notice

pleading standards, all that a complaint must do is set forth "a short and plain statement of the

grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the

pleader is entitled to relief," and "a demand for relief sought." Fed. R. Civ. P. 8(a). Factual

allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the

grounds upon which it rests.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th

Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (other citation

omitted). However, complaints must provide more than labels and conclusions, formulaic

recitations of the elements of causes of action, and facts that do not raise a right to relief above

the speculative level. *Bell Atl. Corp.*, 550 U.S. at 555. Thus, a plaintiff's allegations must show

that his entitlement to relief is plausible, rather than merely speculative. *Tamayo v. Blagojevich,*

526 F.3d 1074, 1083 (7th Cir. 2008). When ruling on Rule 12(b)(6) motions to dismiss, courts

accept as true all well-pleaded allegations, view complaints in the light most favorable to the

plaintiffs, and draw all reasonable inferences in their favor. *Id.* at 1081. The Seventh Circuit has

provided the following summary of the lessons to be learned from the Supreme Court's opinions

in *Twombly* and *Iqbal*:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

In ruling on Rule 12(b)(6) motions to dismiss, courts generally must confine their inquiry to the factual allegations set forth within the operative complaints. *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002). Thus, when parties seeking dismissal under Rule 12(b)(6) submit documents with their motions to dismiss, courts either must ignore the documents or convert the motions to ones for summary judgment. Fed. R. Civ. P. 12(b); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Under Rule 10(c), a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). In the Seventh Circuit, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc.*, 987 F.2d at 431. Documents that fall within this "narrow" exception must be "concededly authentic." *Tierney,* 304 F.3d at 738. Under the exception, the Seventh Circuit has, on several occasions, affirmed the district court's consideration of extraneous materials not attached to a complaint where a claim arises from a contract or other written agreement between the parties. *See Venture Assoc.*, 987 F.2d at 431–32; *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

## FACTS ALLEGED IN FIRST AMENDED COMPLAINT

In the following summation of allegations from the First Amended Complaint, the Court takes as true the factual allegations, but not the legal statements or conclusions.

**A.      General Factual Allegations**

The Plaintiffs are real estate developers who owned interests in property. At all relevant times, Defendants Scheub, Kovachevich, Lain, and Niemeyer were members of the Lake County Advisory Planning Commission (LCAPC), which sets land development policy for Defendant Lake County, Indiana. Defendant Lake County is a local governmental unit. Defendants Northern Indiana Public Services Company, NiSource, Inc., and NiSource Corporate Services, Inc., are Indiana corporations in privity with one another and "masters" of Donald Carnahan of Defendant NiSource.

In 2003, the Plaintiffs obtained interests in approximately thirty-eight acres of real property. They intended to develop the Deer Ridge South Subdivision (DRSS) and to use lot one as their primary residence. Between January 2003 and November 2004, they invested in this development project. Prior to this project, NIPSCO and LCAPC had approved all fifty-five of the Plaintiffs' subdivisions.

The Plaintiffs claim that the Defendants denied the Plaintiffs their business, property, and constitutional rights to develop DRSS according to their first, second, and third plats and denied them their intangible right to the Defendants' honest services. They allege that the Defendants acted willfully, recklessly, oppressively, and with complete indifference to and conscious disregard for the Plaintiffs' rights and violated the following statutory sections in Title 18 of the United States Code: 875(d); 1341; 1343; 1346; 1349; 1951; 1952; 1962(c); and 1962(d). They

claim to have lost over $200,000 in legal fees and over $400,000 in costs as a result of the delays and construction overruns associated with the Defendants' misconduct. They also assert that they have suffered other losses (including economic loss and personal injury) totaling over $1,250,000.

**B.      Factual Allegations Relative to the Claims Against the Lake County Defendants**

The overarching theme of the Plaintiffs' allegations regarding the Lake County Defendants is that they devised a scheme to defraud the Plaintiffs of their interests in developing property by delaying and denying the approval of the Plaintiffs' plats because the Plaintiffs would not play the political games the Lake County Defendants required. They claim that individual Lake County Defendants offered a variety of excuses and created a number of obstacles as part of this scheme. They contend that their plats complied with the applicable ordinances, that waivers suggested or demanded by the Lake County Defendants were not truly necessary, that the applicable ordinances did not require developers to do what they were required to do (such as improve the road on the other side of the property, buy the right of way to improve it, or stop development on the developer's property), that the LCAPC had not enforced the language of the ordinance in the prior nine years as it did with the Plaintiffs, and that the ordinance standards were applied differently to the Plaintiffs than to other developers. They claim that Scheub, Kovachevich, Lain, and Niemeyer misrepresented certain facts as part of their alleged scheme, and that the Lake County Defendants' acts were dishonest and defamatory, acts of extortion and retaliation, and intended to result in the Plaintiffs complying with Scheub's political agenda.

On November 30, 2004, the Plaintiffs submitted their first DRSS primary plat to the LCAPC. From November 2004 to October 2006, Scheub, Kovachevich, Lain, and Niemeyer determined that the LCAPC would not approve the Plaintiffs' plats, which met all applicable LCAPC ordinance requirements. In February 2005, they required the Plaintiffs to change the first primary plat's entrances, even though they knew that the Plaintiffs' first primary plat met all LCAPC requirements. Between November 2004 and October 2006, Kovachevich represented that the Plaintiffs had to reduce the number of lots so that the property density would be reduced by half, even though such was not required by ordinance. Scheub, Kovachevich, Lain, and Niemeyer required the Plaintiffs to change the first primary plat to reduce the number of the lots, change entrances, decrease the number of lots, apply for an irregular lot waiver, change the layout of one lot, buy property across the street from DRSS that was owned by political constituents of Schueb, and install lanes.

In April 2005, the Plaintiffs submitted their second primary plat, which incorporated the purportedly required single entrance. Scheub, Kovachevich, Lain, and Niemeyer misrepresented certain facts as part of their alleged scheme. On May 16, Kovachevich represented that LCAPC ordinance required the Plaintiffs to request an irregular lot waiver, that such waivers were not an uncommon request for subdivision submissions, and that such was necessary because of curves in the proposed roads and the shape of the parcel. He represented that a waiver for only one point of access was necessary because a large wetland area made it impractical to place a road in a certain location, but that the Plaintiffs' four waiver requests were a strong indication that the property had characteristics making it difficult to develop. He also represented that the only reason the density of the Plaintiffs' second primary plat was greater than the Deer Ridge

subdivision to the north was because of the sanitary sewers provided by a certain treatment plant, although this was not true. Kovachevich suggested that the plat would be denied because of the number of waivers and because the density was not consistent with other developments in the vicinity. On May 18, he represented that the second primary plat would be denied, deferred, or delayed unless the Plaintiffs's proposal included fewer lots and required fewer waivers. On May 18, the Plaintiffs were told that their second plat did not fit the area and that they caused their own hardship. On the same date, Scheub and Niemeyer represented that the proposed layout was not in the best interest of land use based on the number of waivers needed, even though they knew that the LCAPC ordinance allowed the second primary plat as it was, Kovachevich had directed the Plaintiffs to request the waivers, and they knew it was in the best interest of the land use. On May 19, Scheub, Kovachevich, Lain, and Niemeyer represented that the LCAPC moved to deny the Plaintiffs' waiver request and defer the Plaintiffs' primary plat petition with a vote of 8-0, that the Plaintiffs' second primary plat did not meet the LCAPC ordinance requirements, and that any subdivision plats should comply with the sections of the subdivision ordinance and not require waivers.

In August 2005, the Plaintiffs submitted their third primary plat for the DRSS. Scheub, Kovachevich, Lain, and Niemeyer misrepresented certain facts as part of their alleged scheme. On September 7, Kovachevich represented that he was unsure whether the Plaintiffs could improve a certain street to the standards required by the LCAPC ordinance, that the LCAPC ordinance required the Plaintiffs to improve and dedicate property the Plaintiffs did not own, and that the LCAPC ordinance required the Plaintiffs to request a waiver, even though he knew the ordinances did not require such. The Plaintiffs were then removed from the LCAPC's October

2005 agenda.

Additionally, on November 16, Kovachevich represented that the Plaintiffs' third primary plat should be denied because nearby wetlands restricted entry into the development and required buffer and because areas set aside as a private park might require Lake County to enforce maintenance. Also on November 16, Kovachevich indicated that the LCAPC had placed the Plaintiffs on the agenda for the LCAPC meeting that day, even though the Plaintiffs had not applied for the waiver, and he informed them that the third primary plat did not meet the subdivision regulation and would be denied. Kovachevich also told the Plaintiffs that they had to reconfigure Lots 1 through 10 to satisfy the applicable ordinance, that the LCAPC would violate the ordinance if it approved the third plat, that the Plaintiffs had to obtain a 40-foot dedication on the opposite side of Clark Street, that the Plaintiffs had to obtain a waiver or purchase the property across the street from DRSS before they could develop the property. On that same day, Scheub represented the he was concerned about the health, welfare, and safety of adjoining property owners and the density of the area, which warranted denial of the plat.

On November 21, Kovachevich indicated that the Plaintiffs' plat was denied for seven reasons. First, the Plaintiffs were required to extend lot lines on Lots 2 through 10 to distribute the entire ownership of the proposed private park (watercourse or wetland area). Second, the Plaintiffs were required to change the depth and width ratio to 3.5:1. Third, the Plaintiffs failed to receive approval from the LCAPC for an alternative proposal. Fourth, the Plaintiffs were required to improve the other side of Clark Street, which the Plaintiffs did not own. Fifth, the Plaintiffs failed to request a waiver from an ordinance requirement. Sixth, the Plaintiffs failed to satisfy concerns regarding the health and welfare of adjoining property owners, particularly as to

traffic and safety. Seventh, the third primary plat lot size was not consistent with lots in the surrounding area, and there had been problems in the area with private sanitary sewage treatment plants.

On some unspecified date in November 2005, Kovachevich admitted that Scheub is a political animal who has voted to grant or deny waivers and subdivision petitions based on political factors, rather than ordinance requirements. He also admitted that Kovachevich's job was on the line with Scheub, that Scheub was pressuring Kovachevich to make negative decisions regarding the Plaintiffs' plats and was delaying and denying their plats, and that Kavachevich would follow the party-line dictated by Scheub.

On December 15, the Plaintiffs initiated a writ of certiorari proceeding against LCAPC alleging that the denial of their plat was arbitrary, capricious, an abuse of discretion, not in accordance with law, contrary to constitutional right, power, and privilege, without observance of procedure as required by law, and unsupported by substantial evidence. On July 24, 2006, the LCAPC allegedly entered into a settlement agreement to withdraw its November 21, 2005, findings, carry out the terms of the agreement, and approve the fourth primary plat on or before August 16, 2006. Counsel for the LCAPC and Kovachevich executed the agreement on behalf of the LCAPC. Although none of the Defendants were parties to the settlement agreement, each knew that a contractual and business relationship existed between the Plaintiffs and the LCAPC and between the Plaintiffs and NIPSCO. On September 25, 2006, the Jasper Circuit Court ruled that the LCAPC deferred its decision on the Plaintiffs' plat, that an attorney has authority to bind his client, that Indiana's Alternative Dispute Resolution Rules applied, that counsel for the LCAPC had authority to bind the LCAPC in the settlement agreement, and that the settlement

agreement is approved and enforced as a judgment. The state court ordered the LCAPC to approve the Plaintiffs' plat no later than October 15, 2006. On April 18, 2007, the Jasper Circuit Court found that on August 16, 2006, the LCAPC voted to defer for thirty days any action on the Plaintiffs' plat and that the LCAPC acted in bad faith in failing to approve the plat until October 25, 2006.[1]

From December 15, 2005, to October 23, 2006, Scheub, Kovachevich, Lain, and Niemeyer were determined not to approve the Plaintiffs' plat notwithstanding the settlement agreement and the Jasper Circuit Court's order. As part of their scheme to defraud, Scheub, Kovachevich, Lain, and Niemeyer misrepresented additional facts. Kovachevich represented that the Plaintiffs could not access, inspect, or copy public records, refused to allow the Plaintiffs access to public records, and told them not to return to the LCAPC office. On February 14, 2006, and June 20, 2006, the Plaintiffs requested certified copies of certain documents, and in July 2006, filed a complaint with the Indiana Office of the Public Access Counselor regarding their requests. During this period, Kovachevich told the Plaintiffs that they could not submit or file stamp supplemental information showing misrepresentations. On August 16, 2006, counsel for the LCAPC indicated that the settlement agreement he signed was only a proposed settlement. Also on August 16, Scheub stated that the Plaintiffs' plat presented a risk or danger based upon a sewer problem, raised a concern regarding the number of residential units, referenced the issues related to road conditions and the health, welfare, and safety of others, and appealed for a thirty-day deferral to meet with the state and defend the LCAPC's actions. On September 6, counsel for the LCAPC indicated that the LCAPC had not authorized him to settle the writ action, that

---

[1] See discussion of the appellate history of this state court case *infra*.

the LCAPC had not settled the writ action, and that the settlement agreement was only a proposed settlement of the action. On October 18, Scheub indicated that the executed settlement agreement was not binding and that counsel for the LCAPC lacked authority to bind the commission, and Scheub, Niemeyer, Lain, and others represented that the LCAPC should approve the Jasper Circuit Court's order as a stall tactic to go forward with an appeal.[2] On October 24, Scheub stated that counsel for the LCAPC was under duress, that the mediator did not understand the commission's position, and that Scheub left the mediation session without signing the settlement agreement. On October 24, Kovachevich "represented that it was in the best interest of [commission] representatives to mediate in bad faith so as not to enter into any agreement at mediation because otherwise the [commission] must ratify the agreement." (First Am. Comp. ¶ 94.)

The Plaintiffs identify thirteen communications that were sent by mail or wire, and they list the names of eighteen other real estate developers who were victims and/or benefactors of the Lake County Defendants' schemes.[3]

## C.     Factual Allegations Relative to the Claims Against the NIPSCO Defendants

The overarching theme of the Plaintiffs' allegations regarding the NIPSCO Defendants is

---

[2] The First Amended Complaint alleges that the Scheub, Niemeyer, Lain, and the others knew that the appeal did not have merit, but the Indiana Supreme Court ultimately ruled in favor of the LCAPC, finding that the settlement agreement was not final until it was approved by a majority of the commission at a public meeting and that the commission did not act in bad faith. *Lake County Trust Co. v. Advisory Plan Comm'n of Lake County*, 904 N.E.2d 1274, 1279 (Ind. 2009).

[3] The First Amended Complaint generically refers to the Defendants in these allegations. However, the communications all appear to be linked to the Lake County Defendants, not the NIPSCO Defendants, and the list of the names of developers highlights LCAPC ordinance violations and whether the LCAPC approved the development plan.

that they joined the scheme of the Lake County Defendants to defraud the Plaintiffs of their interests. The Plaintiffs allege that NIPSCO had bid and performed services on over fifty-five projects for the Plaintiffs, that these projects were usually under contract within two months of the Plaintiffs' request for service, and that the service would be completed shortly thereafter. From May 2005 to June 2007, the Plaintiffs requested NIPSCO service, but the service was not completed until September 2007. The NIPSCO Defendants, through Don Carnahan, agreed with the other Defendants to violate the Plaintiffs' rights under the First Amendment, RICO, and other federal laws. During this period, the NIPSCO Defendants delayed service (even though they knew that time was important to the Plaintiffs) in order to retaliate against the Plaintiffs, to favor the political allies of Scheub, Kovachevich, Lain, and Niemeyer, to punish Scheub's personal and political adversaries, and to advance NIPSCO's business interests by obtaining favor with Scheub and the LCAPC.

## DISCUSSION

Most of the counts alleged in the First Amended Complaint are challenged in the Defendants' Motions to Dismiss. In their Motion to Dismiss, the Lake County Defendants seek dismissal pursuant to Rule 12(b)(1), 12(b)(6), and 12(b)(7). The NIPSCO Defendants seek dismissal in their Motion to Dismiss pursuant to Rule 12(b)(6). In this Opinion and Order, the Court will address the general arguments presented by the Defendants that apply to several claims by the Plaintiffs and then the more specific arguments related to individual counts in the First Amended Complaint.

**A.      Pleading and Motion Practice**

The Court will begin with some observations regarding the pleading and motion practice in this case. The Plaintiffs' First Amended Complaint is a 31-page, 117-rhetorical paragraph document. After 10 paragraphs introducing the claims, providing a statement on jurisdiction, and identifying the parties, the First Amended Complaint presents 25 pages and 96 rhetorical paragraphs of facts followed by 11 rhetorical paragraphs identifying the 11 counts and the legal basis. This approach to pleading places upon the defending parties and the Court the onerous burden of sifting through the pile of factual allegations to determine what facts the Plaintiffs believe provide the bases for the legal claims being alleged. The First Amended Complaint simply does not show the nexus between the legal claims and the factual allegations. This becomes especially burdensome with the claims that must be pled with particularity under Federal Rule of Civil Procedure 9(b). Counsel for the Plaintiffs implicitly acknowledges the burdensomeness of his pleading strategy when he provides the following presentation in his Brief in Opposition to the Lake County Defendants's Motion to Dismiss addressing the Defendants' argument that the First Amended Complaint fails to allege the civil Racketeer Influenced and Corrupt Organization Act (RICO ) claims with particularity:

> In rhetorical paragraphs: 8, 9, 11, 12, 17, 18, 19, 21, 23, 31, 32, 34, 44, 53, 68, 69, 81, 82, 91, 93, 98, 99, 10, 108, 109, 110, 111, 112, and 117 of the First Amended Complaint, Plaintiffs averred the specific circumstances of Scheub's fraudulent conduct with particularity. In rhetorical paragraphs: 8, 9, 11, 12, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 31, 32, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 46, 47, 48, 50, 51, 52, 53, 56, 68, 69, 70, 72, 77, 78, 86, 94, 98, 99, 102(g)(h)(l), 107, 108, 109, 110, 111, 112, and 117 of the First Amended Complaint, Plaintiffs averred the specific circumstances of Kovachevich's fraudulent conduct with particularity. In rhetorical paragraphs: 8, 17, 18, 19, 21, 23, 32, 34, 68, 69, 91, 98, 99, 107, 108, 109, 110, 111, 112, and 117 of the First Amended Complaint, Plaintiffs averred the specific circumstances of Lain's fraudulent conduct with particularity. In rhetorical paragraphs: 8, 17, 18, 23, 31,

15

> 34, 68, 69, 91, 98, 99, 107, 108, 109, 110, 111, 112, and 117 of the First Amended
> Complaint, Plaintiffs averred the specific circumstances of Niemeyer's fraudulent
> conduct with particularity.

(Pls.' Br. in Opp'n 7–8, ECF No. 59.) This approach is unhelpful to the Court in its effort to

assist the parties in identifying the viable claims and moving forward in this litigation.


**B.      Statute of Limitations**

The Lake County Defendants argue that the Plaintiffs' § 1983 claims and the state law

claims arising before November 15, 2005, are barred by the statute of limitations. They highlight

the allegation in the First Amended Complaint that, "[f]or many years now, beginning before

November 16, 2005, and continuing until present, and threatening to continue indefinitely into

the future, the defendants conspired together" to abridge the speech rights of the Plaintiffs, to

protect certain profits illegally, and to extort. (First Am. Compl. ¶ 11.) Thus, they ask the Court

to dismiss any claims or portions of claims that accrued prior to November 15, 2005. Although

the NIPSCO Defendants did not create the clearest record on this ground, it appears that they

join this statute of limitations aspect of the Lake County Defendants' Motion to Dismiss as to

Counts II, VII, VIII, IX, and X.

The Plaintiffs respond that their § 1983 claims, which they identify as Counts I, II, III,

VII, and XI, were filed within two years of the denial of their first plat on November 21, 2005.

They argue that their retaliation, conspiracy, tortious interference, and breach of legal duty

claims, which they identify as Counts VI, VII, IX, and X,[4] were brought within this two year

period. They also contend that their allegations of prior misconduct by the Lake County

---

[4] The Plaintiffs identified Count VII in both lists, but neglected to include Count VIII (negligence per se) in
the second list, even though it seems that Count VIII should have been included in the second list.

Defendants (citing First Am. Compl. ¶¶ 13–37) supported their federal and state racketeering claims, which they identified as Counts IV and V, in addition to their § 1983 and personal injury claims "as background" (Pl.'s Br. in Opp'n 4, ECF No. 59), and that these racketeering claims are governed by a four-year statute of limitations. Thus, the Plaintiffs contend that their claims were brought within the relevant statutory periods.

Section 1983 does not have its own statute of limitations for actions, and consequently the personal injury statute of limitations of the state in which the alleged injury occurred applies. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005); *Brademas v. Ind. Hous. Fin. Auth.*, 354 F.3d 681, 685 (7th Cir. 2004); *see also Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts.")). Under Indiana law, the statute of limitations for personal injury actions is two years. Ind. Code § 34-11-2-4; *see also Behavioral Inst. of Ind., LLC*, 406 F.3d 926, 929 (7th Cir. 2005) (stating that "Indiana's personal injury statute of limitations is two years").

The parties do not appear to have any real disagreement on this issue. The Plaintiffs filed this action on November 15, 2007. For Counts I, II, III, VI, VII, VIII, IX, X, and XI, Indiana's two-year statute of limitations appears to apply, and the Plaintiffs would be limited in asserting claims in these counts to injuries allegedly suffered after November 15, 2005. However, the statute of limitations for a civil Racketeer Influenced and Corrupt Organization Act (RICO) cause of action is four years, *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671,

674 (7th Cir. 2009), and the Plaintiffs have highlighted the connection between the alleged

earlier misconduct and Counts IV and V, which are governed by the longer statute of limitations.

The Seventh Circuit has provided the following relevant instruction:

> Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. But dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness.

*Id.* at 674–75. This case is not one in which the Plaintiffs have pled themselves out of court on

statute of limitations grounds, and the Court will deny the Motions to Dismiss as to the statute of

limitations argument.


**C.**     *Younger* **Abstention**

The Lake County Defendants argue that the Court should abstain from exercising

jurisdiction over Count I (abridgement of speech) and Count III (failure to intervene) because

action by this Court in this case would unduly interfere with the ongoing state court

proceedings.[5] The Lake County Defendants content that a writ of certiorari action was filed in

the Jasper Circuit Court, Indiana, on December 15, 2005, by several plaintiffs, including the

Plaintiffs in this action, and that the state court stayed all state court proceedings while parties

took an appeal. The Plaintiffs respond that the state court litigation (involving a petition for a

writ in equity) could not possibly resolve or dispose of all of the Plaintiffs' claims in this action,

---

[5] The Lake County Defendants' Memorandum of Law is ambiguous regarding the claims they seek to challenge with their *Younger* abstention, *Rooker-Feldman* doctrine, and res judicata arguments. The heading relates to "the remaining federal claims," and the argument relates to "the remaining claims." (Lake County Defs.' Mem. of Law 11, ECF No. 11.) Before making these arguments in their Memorandum of Law, they challenged the Plaintiffs' § 1983 claims, RICO claims (Counts IV and V), § 1983 conspiracy claim (Count II), and equal protection claim (Count XI). The Court understands "remaining federal claims" to refer to Counts I and III.

that no judgment in this action will affect, impinge, or derogate any state court action, and that

the First Amended Complaint does not challenge any state court action or proceedings.

The Seventh Circuit has recently provided the following restatement of the *Younger*

abstention doctrine, which is named for the case that gave rise to the doctrine, *Younger v. Harris*,

401 U.S. 37 (1971):

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976). "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction. . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 358–59 (1989), quoting *Wilcox v. Consolidated Gas Co.,* 212 U.S. 19, 40 (1909) (omission in original).
>
> Under established abstention doctrines, however, a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them. . . .
>
> The *Younger* doctrine requires federal courts to abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings. *FreeEats.com, Inc. v. Indiana,* 502 F.3d 590, 595 (7th Cir. 2007) (reversing denial of *Younger* abstention and ordering dismissal of federal case). . . .
>
> The original core of *Younger* abstention—from *Younger* itself—requires federal courts to abstain when a criminal defendant seeks a federal injunction to block his state court prosecution on federal constitutional grounds. See 401 U.S. at 53–54. While the Supreme Court has extended *Younger* to civil proceedings, beginning with *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–604 (1975), it has done so only in limited circumstances. The civil brand of *Younger* extends only to a federal suit filed by a party that is the target of state court or administrative proceedings in which the state's interests are so important that exercise of federal judicial power over those proceedings would disregard the comity between the states and federal government. . . . *Younger* is still "appropriate only when there is [a state judicial or administrative] action against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." *Forty One News, Inc. v. County of Lake,* 491 F.3d 662, 665 (7th Cir. 2007).

*SKS & Assocs., Inc. v. Dart*, — F.3d —, —, 2010 WL 3363493, at *2 (7th Cir. Aug. 27, 2010).

The *Younger* abstention doctrine does not apply here. This is not a case that involves a

claim seeking equitable relief against state proceedings on federal constitutional grounds. The Plaintiffs have not come to federal court with a constitutional claim for equitable relief that seeks to compel the state court to manage any pending state case or cases in a particular way or to stop enforcement of state law. Furthermore, the Plaintiffs are among the plaintiffs in the state court case, not the defendants. Consequently, the Court is unpersuaded by the Lake County Defendants' *Younger* abstention argument and will deny this aspect of their Motion to Dismiss.

**D.    *Rooker-Feldman* Doctrine**

Citing the *Rooker-Feldman* doctrine, the Lake County Defendants argue that this Court lacks jurisdiction over Count I (abridgement of speech) and Count II (failure to intervene) because action by this Court in this case would require the Court to adjudicate claims seeking review of state court judgments. The Lake County Defendants essentially argue that the adjudication of this case would be tantamount to appellate review of the underlying state court judgment in the writ of certiorari action filed in the Jasper Circuit Court, Indiana. They contend that this case is inextricably intertwined with the prior state court judgment. The Plaintiffs respond that this case in no way requires this Court to review a state court judgment.

The Court notes that among the several notices of supplemental authority filed by the parties was a notice of the Indiana Supreme Court's opinion in *Lake County Trust Co. v. Advisory Plan Comm'n of Lake County*, 904 N.E.2d 1274 (Ind. 2009). In that case, the Indiana Supreme Court granted transfer, vacated the opinion of the Indiana Court of Appeals (883 N.E.2d 124), and affirmed in part and reversed in part the judgment of the Jasper Circuit Court. The court determined that the LCAPC's failure to promptly approve the subdivision did not

constitute bad faith conduct warranting sanctions because the settlement agreement resulting from the mediation was not final until it was approved by a majority of that commission at a public meeting. *Lake County Trust Co.*, 904 N.E.2d at 1279.

The *Rooker-Feldman* doctrine, articulated by the Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), is a jurisdictional rule directing that only the Supreme Court of the United States may review the judgment of a state court in civil litigation. *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 569 F.3d 667, 670 (7th Cir. 2009). The doctrine holds that federal district courts lack jurisdiction over lawsuits "'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commence and inviting district court review and rejection of those judgments.'" *Lance v. Dennis,* 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)); *see also Freedom Mortg. Corp.*, 569 F.3d at 671; *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008). Thus, the doctrine "'precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.'" *Taylor v. Fed. Nat'l Mortg. Ass'n,* 374 F.3d 529, 532 (7th Cir. 2004) (quoting *Brokaw v. Weaver,* 305 F.3d 660, 664 (7th Cir. 2002)). The *Rooker-Feldman* doctrine still deprives lower federal courts of jurisdiction if the claims made in federal court are "inextricably intertwined" with the state court judgment. *Feldman,* 460 U.S. at 486; *Brokaw,* 305 F.3d at 664. Although "'inextricably intertwined' is a somewhat metaphysical concept," the key issue is whether the district court is

being asked to review the state court decision, and this "determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004). In other words, the *Rooker-Feldman* doctrine is inapplicable when the alleged injury is distinct from the judgment. *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008).

This case is not one in which the Plaintiffs are asking this Court to review or overturn a state court judgment. When the Plaintiffs instituted this case, they were not state court losers complaining of injuries caused by a state court judgment—they had actually received a favorable trial court ruling that the Advisory Plan Commission of Lake County acted in bad faith. Furthermore, the injuries the Plaintiffs claim to have suffered occurred prior to and are distinct and independent from the judgment in the Jasper Circuit Court case that was reviewed by the Indiana Court of Appeals and the Indiana Supreme Court. Consequently, the Court is unpersuaded by the Lake County Defendants that this Court lacks jurisdiction under the *Rooker-Feldman* doctrine, and the Court will deny this aspect of their Motion to Dismiss.

## E.      Claim and Issue Preclusion

Invoking the Full Faith and Credit Act, 28 U.S.C. § 1738, and its implications for claim and issue preclusion in federal courts, the Lake County Defendants argue that Indiana's rules of claim and issue preclusion bar the Plaintiffs' attempt to relitigate in this case claims and issues that have already been decided by Indiana state courts. The Lake County Defendants acknowledge that all of the named Defendants in this case were not parties to the state court

action and that the Plaintiffs in this case were only two of the petitioners in the state court action. The Plaintiffs respond that the decision of the Jasper Circuit Court did not issue a judgment on the merits of any of the claims on the writ petition and did not determine any of the merits of any of the Plaintiffs' claims in this case.

The Court declines the Lake County Defendants' invitation to resolve the issues of claim and issue preclusion on the current record. In the record before the Court are the following: the April 18, 2007, Findings of Fact, Conclusions of Law and Order of the Jasper Circuit Court (ECF No. 40-4) on a motion for sanctions filed pursuant to the Indiana Rules for Alternative Dispute Resolution; the May 16, 2007, Order of the Jasper Circuit Court (ECF No. 35-2) staying the state court case pending completion of the interlocutory appeal; the March 20, 2008, Opinion of the Indiana Court of Appeals (ECF No. 40-5), which was vacated by the Indiana Supreme Court; and the April 28, 2009, Opinion of the Indiana Supreme Court (ECF No. 95). The Court does not have other critical pleadings and documents from the underlying state court proceeding, and the Plaintiffs' First Amended Complaint does not resolve the questions. It is unclear from the current record what matters were (or might have been) litigated in the state court proceeding/action, what merits were reached, what scope of bad faith was resolved, whether the same parties or their privies were sufficiently involved in the prior action, whether the Plaintiffs had a full and fair opportunity to litigate the issues in that state court proceeding, and whether it would be unfair to give preclusive effect to issues resolved in that proceeding. Claim and issue preclusion (res judicata and collateral estoppel) are affirmative defenses. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). Although courts may permit preclusion doctrines to be raised and determined on a Rule 12(b)(6) motion when the grounds for preclusion appear on the face of the

complaint or involve matters of which the court can take judicial notice, establishing such

defenses often requires consideration of matters outside the complaint, and thus summary

judgment is often a better tool. *See, e.g., D & K Props. Crystal Lake v. Mut. Life Ins. Co. of New*

*York*, 112 F.3d 257, 259 & n.1 (7th Cir. 1997). The Court will deny without prejudice the Lake

County Defendants' Motion to Dismiss as to their argument that claim preclusion and issue

preclusion bar the Plaintiffs' litigation of their claims in this action.


**F.      RICO Claims**

The Lake County Defendants ask the Court to dismiss Counts IV and V because the

Plaintiffs failed to adequately plead predicate acts of mail or wire fraud and a pattern of

racketeering activity. They also argue that the Plaintiffs cannot state a RICO claim against the

individual Defendants in their official capacities. The NIPSCO Defendants join this aspect of the

Lake County Defendants' Motion to Dismiss as to Count V. The NIPSCO Defendants also aks

the Court to dismiss Count V, arguing that the Plaintiffs have failed to state a claim upon which

relief can be granted. The Plaintiffs respond that the Plaintiffs' Hobbs and Travel Act predicates

need not be pled with particularity, that they adequately pled the wire and mail fraud predicates,

and that they properly alleged a pattern of racketeering activity. The Lake County Defendants

reply with some of the same arguments about the predicate acts of mail and wire fraud and a

pattern of racketeering activity, but add that the Plaintiffs lack standing to assert hypothetical

claims of third persons to support their claim that the Defendants engaged in a pattern of

racketeering activity.

1.    *Official Capacity RICO Claims*

Because municipalities cannot be held liable under RICO and because "official capacity" suits are simply a way of pleading an action against a municipality, county officials cannot be held liable under RICO in their official capacity. *Curtis v. Wilks*, 704 F. Supp. 2d 771, 786 (N.D. Ill. 2010) (citing cases). Accordingly, the Court will grant the Lake County Defendants' Motion to Dismiss the Plaintiffs' "official capacity" RICO claims against the county officials.

2.    *RICO Claims Against the Individual Lake County Defendants and the NIPSCO Defendants*

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). It also makes it "unlawful . . . to conspire to violate" § 1962(c). 18 U.S.C. § 1962(d). A RICO claim does not concern all instances of wrongdoing, but focuses on the limited purpose of "eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). A RICO plaintiff must prove four elements in a § 1962(c) claim: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Id.*

The Plaintiffs claim predicate acts by the Lake County Defendants on alleged violations of four federal criminal statutes involving various transactions (four plat submissions, plat submissions of eighteen other real estate developers, and thirteen communications), several victims (the Plaintiffs and their trusts, their employees, other Lake County developers, and Lake County citizens), various injuries (redesign of plats, delay costs, costs associated with meeting

with state and local entities, litigation costs, investment costs, and lost profits), at least five

perpetrators (Scheub, Kovachevich, Lain, Niemeyer, and NIPSCO), and a threat of continued

racketeering activity.

Based upon the Plaintiffs' claims, "[r]acketeering activity" in this case means "any act or

threat involving . . . bribery [or] extortion . . . which is chargeable under State law and

punishable by imprisonment for more than one year; or any act which is indictable under . . .

section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), . . . section 1951

(relating to interference with commerce, robbery, or extortion), [or] section 1952 (relating to

racketeering)." 18 U.S.C. § 1961(1). The Hobbs Act makes criminal conduct that obstructs,

delays, or affects interstate commerce by robbery or extortion or that attempts or conspires to do

the same. 18 U.S.C. § 1951. The First Amended Complaint uses the label "extortion," but the

Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent,

induced by wrongful use of actual or threatened force, violence, or fear, or under color of official

right." 18 U.S.C. § 1951(b)(2). The conduct alleged in the First Amended Complaint is not

tantamount to criminal extortion, and thus the Court finds that the Plaintiffs have not alleged

predicate acts of racketeering activity under the Hobbs Act.

The Travel Act, 18 U.S.C. § 1952, provides in relevant part:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or
> any facility in interstate or foreign commerce, with intent to—
> (1) distribute the proceeds of unlawful activity; or
> (2) commit any crime of violence to further any unlawful activity; or
> (3) otherwise promote, manage, establish, carry on, or facilitate the
> promotion, management, establishment, or carrying on, of any unlawful activity,
> and thereafter performs or attempts to perform [any of the acts specified in
> subparagraphs (1), (2), and (3), shall be fined or imprisoned].

18 U.S.C. § 1952(a). The Travel Act provides its own definition of "unlawful activity," which

includes "(1) any business enterprise involving gambling, liquor . . . , narcotics or controlled substances . . . , or prostitution offenses in violation of the laws of the State in which they are committed or of the United States," "(2) extortion, bribery, or arson," or "(3) any act which is indictable under [certain provisions of the United States Code." 18 U.S.C. § 1952(b). Again, the conduct alleged in the First Amended Complaint is not tantamount to criminal conduct addressed in the Travel Act, and thus the Court finds that the Plaintiffs have not alleged predicate acts of racketeering activity under the Travel Act.

As to the alleged violations of the mail and wire fraud statutes, allegations of fraud in a civil RICO claim are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead all allegations of fraud with particularity. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). A plaintiff must explain how the predicate act of mail fraud or wire fraud constitutes "racketeering activity." *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003). An act of mail or wire fraud requires the following showing: (1) that the defendant participated in a scheme to defraud, (2) with the intent to defraud, and (3) used the mail for 18 U.S.C § 1341 or interstate wire for 18 U.S.C § 1343 in furtherance of the fraudulent scheme. *United States v. Howard*, — F.3d —, —, 2010 WL 3385175, at *4 (7th Cir. Aug. 30, 2010). "A scheme to defraud requires the making of a false statement or material misrepresentation, or the concealment of material fact." *United States v. Sloan*, 492 F.3d 884, 890 (7th Cir. 2007) (quotation marks and citation omitted). Consequently, Rule 9(b) requires specifying the time, place, and content of the alleged fraudulent communication, the method by which the misrepresentations were communicated, and the identities of the parties to those

misrepresentations. *Slaney*, 244 F.3d at 597 (citing *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726, 728–29 (7th Cir. 1998)). Dismissal of a RICO claim is appropriate if the plaintiff fails to allege sufficient facts to state a claim that is plausible on its face, but whether the number of facts pled is adequate will vary depending on the complexity of the case. *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

The Court finds that the Plaintiffs' First Amended Complaint fails to allege sufficient facts to state a civil RICO claim predicated on mail and wire fraud. The Plaintiffs identify thirteen communications sent by mail or wire (some apparently originating from the Plaintiffs), but these communications are neither attached to the First Amended Complaint nor summarized or excerpted in the Plaintiffs' pleading. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (stating that "loose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do") (quotation marks and citation omitted). Furthermore, the First Amended Complaint alleges an array of representations by the individual Lake County Defendants, but these allegations do not demonstrate that they were by mail or wire. In fact, most of them look to be statements made in person to the Plaintiffs as the individual Defendants were providing feedback to the Plaintiffs regarding their plat submissions and the related issues. Additionally, the First Amended Complaint focuses on Scheub and Kovachevich and fails to adequately inform each individual Defendant of the nature of his alleged participation in the fraud. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (stating that "in a case involving multiple defendants, . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud") (quotation marks and citations omitted).

The Court also finds that the Plaintiffs have failed to allege a pattern of racketeering

activity. A "pattern of racketeering activity" requires at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5). Establishing a pattern requires a showing that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). "Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir. 1986).

Among the deficiencies in alleging a pattern of racketeering activities is the failure of the First Amended Complaint to allege victims of the Defendants' scheme. The First Amended Complaint sets forth a list of eighteen other real estate developers who were victims and/or benefactors of the schemes. This list names developers, indicates that there were violations of LCAPC ordinances, and states whether their projects were approved or denied. The list does not indicate any time frames or show any basis for relating it to the scheme alleged in this case. This list manifests suspicion and speculation on the part of the Plaintiffs, but it does not show a plausible basis for a pattern of racketeering activity.[6] For these reasons, the Court will grant the

---

[6] The Court has found the following discussion of the "prototypical RICO case" by Judge Lozano relevant to the issues presented in this case:

Our circuit has described the "prototypical RICO case" as:

one in which a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetuate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over.

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997).

This case is far from the prototypical RICO case. In fact, as currently pled, Plaintiffs fail to allege anything more than a scheme by Defendants designed to harass [the Defendants]. Indeed, what is evident from the Complaint is that Defendants allegedly delayed Plaintiffs' developments based upon Nammari's political association with David Lasco and Nammari's ethnicity, religious beliefs and/or national origin. (Am. Cmplt ¶ 54). Notably, though, "RICO is not a substitute for" isolated civil rights actions. *Corley v. Rosewood Center, Inc. of Peoria*, 388 F.3d 990, 1002 (7th Cir. 2004). This case involves isolated acts of alleged discrimination, not organized, habitual

Lake County Defendants' Motion to Dismiss as to the Plaintiffs' civil RICO claim under 18 U.S.C. § 1962(c) in Count IV.

In the Plaintiffs' RICO claim in Count V under 18 U.S.C. § 1962(d), they allege that the individual Lake County Defendants and the NIPSCO Defendants violated § 1962(d) and Indiana RICO and conspiracy law when they conspired to violate § 1962(c) and agreed to commit at least two predicate acts.[7] The target of § 1962(d) is the agreement to violate RICO's substantive provisions, not the actual violations themselves. *Slaney*, 244 F.3d at 600. To state a valid claim for conspiracy under § 1962(d), a plaintiff must allege the following: (1) that the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity; and (2) that the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. *Id.*

The Plaintiffs' labels and conclusions are inadequate to state a claim under 18 U.S.C. § 1962(d), and the Court finds that the Plaintiffs have failed to allege facts sufficient to show that this claim is plausible, rather than merely speculative. The Plaintiffs have not alleged facts

---

criminal conduct and, therefore, the RICO claim must be dismissed. *Gamboa v. Velez*, 457 F.3d 703, 710 (7th Cir.2006).
*Nammari v. Town of Winfield*, No. 2:07-CV-306, 2008 WL 4757334, at *9 (N.D. Ind. Oct. 29, 2008).

[7] The Plaintiffs invoke Indiana RICO and conspiracy law in Count V of the First Amended Complaint, but they do not develop the claims they would like to make by referencing relevant Indiana law in their pleading. In a brief, the Plaintiffs state that "Indiana's RICO statute imposed liability both on the managers of the [plan commission] and on the 'foot soldiers' of the [commission]." (Pls.' Br. in Opp'n , ECF No. 59 (citing an Indiana Supreme Court opinion, an Indiana Court of Appeals opinion, and two Indiana statutes).) In another brief, they discuss Indiana RICO, citing the criminal RICO statute (Ind. Code § 35-45-6-2), but they do not develop their argument by discussing such matters as the Indiana statute authorizing a civil RICO action, elements of a Indiana RICO claim, or any differences between federal RICO claims and Indiana RICO claims. In their submissions, their focus has been on the federal RICO claims. The Plaintiffs are represented by learned counsel, and the Court will not undertake to research and examine a potential claim under Indiana RICO and conspiracy law when the Plaintiffs themselves have not sufficiently presented the claim or offered developed arguments in support. The Plaintiffs having failed to show any difference in the analysis of a federal § 1962(d) RICO claim and an Indiana RICO claim, the Court assumes the same analysis applies and warrants dismissal of the Plaintiffs' Indiana RICO and conspiracy claims.

showing agreement to maintain an interest in or control of an enterprise or to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes or agreement that someone would commit at least two predicate acts to accomplish those goals. The Plaintiffs' allegations of agreement and conspiracy are simply too sketchy, vague, and conclusory to state a claim for relief. Accordingly, the Court will grant the Lake County Defendants' Motion to Dismiss and the NIPSCO Defendants' Motion to Dismiss as to the Plaintiffs' civil RICO claim under 18 U.S.C. § 1962(d) and Indiana RICO in Count V.

**G.      Conspiracy to Violate Rights**

In Count II, the Plaintiffs allege that Defendants Scheub, Kovachevich, Lain, Niemeyer, Lake County, Indiana, and NIPSCO conspired to violate their First and Fourteenth Amendment rights. They claim that the Defendants did this under the color of law, with retaliatory motive, and with the purpose of advancing their political and business interests. Count II is brought pursuant to 42 U.S.C. § 1983. The Lake County Defendants argue that the conspiracy claims should be dismissed because the Plaintiffs only allege a political conspiracy, that 42 U.S.C. § 1985(3) and not 42 U.S.C. § 1983 is the correct procedural vehicle to bring civil rights conspiracy claims, but that the Plaintiffs' conspiracy claims allege no racial motivation. The NIPSCO Defendants argue that they are private entities and that a bare allegation of conspiracy between private and public entities is insufficient to bring private entities within the scope of § 1983.

As an initial matter, the Court notes that the conspiracy claim alleged in Count II of the Plaintiffs's First Amended Complaint is under § 1983, not § 1985. Section 1985(3) prohibits a

conspiracy to deprive another of federally protected rights, but the conspiracy must be motivated by racial or other class-based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). The First Amended Complaint alleges no racial or other class-based discriminatory motivation, and thus the Court takes Count II at face value and understands it to allege a § 1983 conspiracy claim. Accordingly, the Court will deny the Lake County Defendants' Motion to Dismiss on this argument.

Section 1983 provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege a violation of rights secured by the Constitution and laws of the United States and show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988). Although a private defendant is not a state actor, the private actor may be held liable under § 1983 if that private actor conspired with a state actor to violate the plaintiff's civil or constitutional rights. *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008); *Proffitt v. Ridgway*, 279 F.3d 503, (7th Cir. 2002). To establish § 1983 liability under a conspiracy theory, a plaintiff must demonstrate: (1) that a state official and one or more private individuals reached an understanding to deprive the plaintiff of his constitutional rights; and (2) that those individuals were willful participants in joint activity with the state actors. *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). Although Rule 9(b) does not require conspiracy to be alleged with particularity, such a claim "differs from other claims in having a degree of vagueness that makes a bare claim of 'conspiracy' wholly uninformative to the defendant." *Loubser v. Thacker*, 440 F.3d 439, 442–43 (7th Cir. 2006). "[A] bare allegation of conspiracy [is] not enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter*,

583 F.3d 967, 970 (7th Cir. 2009). Furthermore, "mere suspicion that persons adverse to the plaintiff had joined a conspiracy [i]s not enough." *Id.* at 971.

The Plaintiffs' allegation of a conspiracy involving the NIPSCO Defendants is not sufficiently informative to survive the NIPSCO Defendants' Motion to Dismiss for failure to state a claim. Giving them the favorable reading that is required at this stage, the Plaintiffs' conspiracy allegations as to the NIPSCO Defendants are bare and reveal mere suspicion, not a plausible conspiracy claim. In conclusory fashion, the First Amended Complaint states: "NIPSCO, through and by its agent, Don Carnahan, agreed with the other defendants to violate the Plaintiffs' rights under the laws and Constitution of the United States, including the First Amendment and RICO." (Pls.' First Am. Compl. ¶ 97.) The Court is not required to accept this legal conclusion, especially considering that it is unsupported by the factual allegations in the First Amended Complaint. The allegations of delay do not lend support because the causes for delay (if in fact there was delay) could be for any number of reasons other than conspiracy. *See, e.g., Brooks*, 578 F.3d at 581–82 ("The behavior [the plaintiff] has alleged that the defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing. Without more, [the plaintiff's] allegations are too vague to provide notice to defendants of the contours of his § 1983 due process claim."). The allegations that the NIPSCO Defendants delayed service in order to retaliate against the Plaintiffs, to favor the political allies of Scheub, Kovachevich, Lain, and Niemeyer, to punish Scheub's personal and political adversaries, and to advance NIPSCO's business interests by obtaining favor with Scheub and the LCAPC are speculative and do not plausibly suggest that NIPSCO reached an understanding with any of the other Defendants to deprive the Plaintiffs of their civil or constitutional rights. Consequently, the Plaintiffs' § 1983

33

conspiracy allegations against the NIPSCO Defendants do not cross the line from conceivable to plausible, and the Court will grant the NIPSCO Defendants' Motion to Dismiss as to the § 1983 conspiracy claim alleged against them.

**H.     Illegal Conspiracy**

In Count VII, the Plaintiffs allege that all of the Defendants illegally conspired to commit unlawful acts and to cover up unlawful acts, specifically referencing 18 U.S.C. § 241 (conspiracy against rights) and 18 U.S.C. § 242 (deprivation of rights under color of law). Count VII purports to be brought pursuant to 42 U.S.C. § 1983.[8] The NIPSCO Defendants argue conspiracy claims pursuant to 18 U.S.C. §§ 241 and 242 are not properly brought in a civil proceeding.[9]

The Plaintiffs' theory for Count VII is unclear and dubious. The two federal statutes cited (i.e., 18 U.S.C. §§ 241 and 242) are criminal statutes. Private citizens cannot prosecute for alleged violations of these statutes, and the Plaintiffs have not shown any authority supporting a private right of action for alleged violations of these statutes whether under § 1983 or otherwise. *See Cooney v. Rossiter*, No. 07 C 2747, 2008 WL 3889945, at *18 (N.D. Ill. Aug. 20, 2008); *Jeffries v. Dutton & Dutton, P.C.*, No. 05 C 4249, 2006 WL 1343629, at *7 (N.D. Ill. May 11, 2006); *Jones v. GES Exposition Servs., Inc.*, No. 02 C 6243, 2004 WL 2011396, at 7 n.5 (N.D. Ill. Sept. 7, 2004); *Lerch v. Boyer*, 929 F. Supp. 319, 322 (N.D. Ind. 1996). Consequently, the

---

[8] The First Amended Complaint also states that the Defendants engaged in an illegal conspiracy under Indiana law, but the First Amended Complaint and the Plaintiff's briefing do not identify the relevant Indiana law or show any entitlement to recover under § 1983 on this theory.

[9] It does not appear that the Lake County Defendants moved to dismiss Count VII on this ground. Accordingly, the Court will limit its consideration regarding illegal conspiracy in Count VII to the NIPSCO Defendants' Motion to Dismiss.

Court will grant the NIPSCO Defendants' Motion to Dismiss as to Count VII alleging illegal conspiracy and will dismiss this count with prejudice.

## I.     Equal Protection

The Plaintiffs contend in Count XI that Defendants Scheub, Kovachevich, Lain, Niemeyer, and Lake County, Indiana, violated the Plaintiffs' Fourteenth Amendment/equal protection rights by treating them differently than similarly situated property owners because of personal bias and animus in bad faith to injure the Plaintiffs. The Court notes that Count I of the First Amended Complaint separately alleges that the Lake County Defendants infringed upon the Plaintiffs' First Amendment speech rights by retaliating against them for exercising their freedom of speech and association. Count I is not specifically targeted in the Lake County Defendants' Motion to Dismiss, except to the extent that general arguments are applicable.

As to Count XI, the Lake County Defendants argue that the Court should dismiss that claim because there is no allegation of invidious discrimination based on a suspect class such as race or gender, because the sole claim of animus is related to political concerns, and because this claim should be analyzed as political discrimination under the First Amendment, not under the Equal Protection Clause of the Fourteenth Amendment. They also argue that qualified immunity shields the individual Lake County Defendants from any award of damages as to the Plaintiffs' equal protection claim.

The Equal Protection Clause reaches "state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a 'fundamental right,' or because

35

the person is a member of a group that is the target of irrational government discrimination."

*Abcarian v. McDonald*, — F.3d —, —, 2010 WL 3189153, at *6 (7th Cir. Aug. 13, 2010) (citing

*Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008); *Plyler v. Doe*, 457 U.S. 202,

216–17 (1982); *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009)). In the absence of a

deprivation of a fundamental right or the existence of a suspect class, the proper standard is

rational basis, which requires plaintiffs to show that (1) the state actor intentionally treated the

plaintiffs differently from others similarly situated, (2) this different treatment was caused by the

plaintiffs' membership in the class to which they belong, and (3) this different treatment was not

rationally related to a legitimate state interest. *Srail*, 588 F.3d at 943. The Supreme Court has

recognized the prospect of a so-called "class-of-one" equal protection claim. *Abcarian*, 2010 WL

3189153, at *6 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)). A class-of-one

claim need not allege discrimination based on a suspect classification (i.e., the second factor),

but must allege that the plaintiff was singled out arbitrarily, without rational basis, for unfair

treatment. *Abcarian*, 2010 WL 3189153, at *6 (citing *Avila v. Pappas*, 591 F.3d 552, 554 (7th

Cir. 2010); *Srail*, 588 F.3d at 943).

     The Plaintiffs framed Count XI, more or less, in terms of a "class-of-one" equal

protection claim. The authority that the Lake County Defendants rely upon to argue that the

Plaintiffs' equal protection claim should be analyzed as political discrimination under the First

Amendment (i.e., *Pagan v. Calderon*, 448 F.3d 16, 36 (1st Cir. 2006)) is from outside the

Seventh Circuit, and this precedent does not seem to have taken root in the Seventh Circuit.

Additionally, the Seventh Circuit in its recent opinion in *Abcarian* addresses the plaintiff's First

Amendment retaliation claim and Fourteenth Amendment "class-of-one" equal protection claim

as distinct claims. *Abcarian*, 2010 WL 3189153, at *3–7; *see also Smith v. City of Chi.*, 457 F.3d 643 (7th Cir. 2006). Consequently, the Court will deny the Lake Count Defendants' Motion to Dismiss as to their argument that Count XI states no viable equal protection claim.

"The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, — F.3d —, —, 2010 WL 3169326, at *3 (7th Cir. Aug. 12, 2010) (citing *Pearson v. Callahan,* 129 S.Ct. 808, 815 (2009)). When a court is confronted with a claim for qualified immunity, the court addresses two questions in whichever order the court believes best suited to the circumstances of the particular case at hand: (1) whether the plaintiff's allegations make out a deprivation of a constitutional right; and (2) whether the right was clearly established at the time of defendant's alleged misconduct. *Id.* (citing *Pearson,* 129 S.Ct. at 818, and *Wheeler v. Lawson,* 539 F.3d 629, 639 (7th Cir. 2008)).

The Court has already found that the Plaintiffs have alleged a deprivation of their Fourteenth Amendment/equal protection right. By at least 2000, the right was clearly established that a state actor could not intentionally treat a plaintiff differently from others similarly situated, singling the plaintiff out arbitrarily for unfair treatment without rational basis or a rational relationship to a legitimate state interest. *See Olech*, 528 U.S. 562*; Abcarian*, 2010 WL 3189153, at *6; *Srail*, 588 F.3d at 943. Accordingly, the Court will deny the individual Lake County Defendants' Motion to Dismiss as to their argument that qualified immunity protects them from liability on the equal protection claim.

**J.**     **Indiana Tort Claims Act**

The Lake County Defendants argue that the Plaintiffs' state law claims (claims under

Indiana's RICO statute (Count V), the Indiana Constitution (Count VI), tortious interference

(Count IX), and intentional infliction of emotional distress (Count X)) are barred by the

immunities under the Indiana Tort Claims Act. Citing Indiana Code § 34-13-3-3(7) and (11), the

Lake County Defendants argue that these immunity provisions grant immunity to the LCAPC

(Lake County is the actual Defendant, not LCAPC) and its agents/employees for the

performance of discretionary functions and that the plat approval process is a discretionary

function. They also indicate that they are not proceeding at this time with their argument that the

Plaintiffs failed to timely file a notice of tort claim because that argument will require

development of the factual record.

For a government employee to qualify for immunity under the act, the employee must

have been acting within the scope of his employment, and the Plaintiffs' loss must have occurred

as a result of the government employee's performance of his discretionary functions. Ind. Code §

34-13-3-3 (stating that "[a] governmental entity or an employee acting within the scope of the

employee's employment is not liable if a loss results from the following: . . . (7) The

performance of a discretionary function; . . . (11) The . . . denial . . . of . . . any permit, . . .

approval, . . . or similar authorization, where the authority is discretionary under law."). The

Plaintiffs essentially claim that the Lake County Defendants were acting unlawfully outside the

scope of their employment. Accordingly, the Court is unpersuaded by the Lake County

Defendants' argument that they are entitled to immunity under the Indiana Tort Claims Act on

the Plaintiffs' state law claims, and the Court will deny this aspect of the Lake County

Defendants' Motion to Dismiss.

**K.      Negligence Per Se**

In Count VIII, the Plaintiffs alleges negligence per se against the NIPSCO Defendants. The Plaintiffs rely upon the following sentence of the relevant Indiana statute: "Every public utility is required to furnish reasonably adequate service and facilities." Ind. Code § 8-1-2-4. The NIPSCO Defendants argue that the Plaintiffs have failed to state a claim.

"Indiana courts have a long and continuous history of recognizing negligence actions for statutory violations." *Kho v. Pennington*, 875 N.E.2d 208, 212 (Ind. 2007). "The violation of a duty fixed or prescribed by statute is often described as negligence per se." *Id.* The "unexcused violation of a statutory duty constitutes negligence per se 'if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation.'" *Id.* at 212–13 (quoting *Plesha v. Edmonds ex rel. Edmonds*, 717 N.E.2d 981, 986 (Ind. Ct. App. 1999)).

The statute the Plaintiffs rely on addresses rates and charges by public utilities for services and facilities provided. It imposes a duty on public utilities to serve the public without discrimination, requires that charges be reasonable and just, prohibits and declares unlawful unjust and unreasonable charges, mandates a connection between the service rendered and the rate charged, and thereby protects consumers. Ind. Code § 8-1-2-4; *see also Citizens Action Coalition of Ind., Inc. v. N. Ind. Pub. Serv. Co.*, 485 N.E.2d 610, 614–15 (Ind. 1985). The sentence highlighted by the Plaintiffs must be understood in this context. Although it would seem that the Plaintiffs as Indiana citizens and consumers would be included in the class of

persons the statute was intended to protect, on closer examination the class of persons the statute was intended to protect was consumers being charged unreasonable and unjust rates by public utilities for the services rendered, and the risk of harm targeted by the statute involved unreasonable and unjust rates and charges, not the harm the Plaintiffs claim. *See Elder v. Fisher*, 217 N.E.2d 847, 850 (Ind. 1996) ("[I]f the obvious intention of a statute is to provide for the safety of the public, the violation of that statute is negligence per se. However, it does not follow that simply because a statute cannot be labeled a 'safety statute,' it does not create a duty, the violation of which would be negligence. The function of a prohibitory statute in negligence cases is the establishment of a duty, the violation of which constitutes the negligence. Hence we have the general requirement that the statute must not have been enacted for a wholly different purpose than to prevent the injury complained of, and that the statute must be designed to protect the class of people to whom a plaintiff belongs.") (citation omitted). Consequently, the Court will grant the NIPSCO Defendants' Motion to Dismiss as to the Plaintiffs' negligence per se claim and dismiss Count VIII with prejudice.

**L.  Tortious Interference**

In Count IX, the Plaintiffs allege tortious interference with contractual, business, and/or services interests against all of the Defendants. The NIPSCO Defendants argue that tortious interference with contract and business relationship (two separate tort theories) have similar elements and receive essentially the same analysis and that the Plaintiffs have not pled the existence of any contract or business relationship known to Mr. Carnahan or the NIPSCO Defendants, nor any actions undertaken by Mr. Carnahan or the NIPSCO Defendants that

interfered with any such contract or business relationship. They also contend that a person cannot interfere with his own contract or business relationship, and if that is the crux of the Plaintiffs' claim, then the Plaintiffs are improperly trying to convert a contract action into a tort action. As for tortious interference with services, the NIPSCO Defendants contend that this tort does not exist independently in Indiana law. The Plaintiffs do not appear to respond to this argument.

The Court agrees with the NIPSCO Defendants. To establish a claim of tortious interference with a contractual relationship, a plaintiff must show: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994). To establish a claim of tortious interference with a business relationship, a plaintiff must show: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from the defendant wrongful interference with the relationship. *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 n.21 (Ind. 2001). It does not appear that Indiana law recognizes a separate claim for tortious interference with services.

In their First Amended Complaint, the Plaintiffs allege no existing valid contract the breach of which the NIPSCO Defendants intentionally induced and no valid business relationship with which the NIPSCO Defendants intentionally interfered. Consequently, as to the claims against the NIPSCO Defendants, the Plaintiffs' allegations of tortious interference with

contract, business relationship, and services do not show that these claims are plausible, rather than merely speculative, and that the Plaintiffs are entitled to relief on these claims. For these reasons, the Court will grant the NIPSCO Defendants' Motion to Dismiss as to these tortious interference claims and dismiss Count IX against the NIPSCO Defendants.

**M.      Emotional Injury/Distress**

In Count X, the Plaintiffs allege a claim for emotional distress caused by reckless and intentional conduct and/or incident to breaches of a legal duty against all of the Defendants. The NIPSCO Defendants argue that the Plaintiffs failed to state a claim because Indiana law does not recognize an independent claim for emotional injury that arises from pecuniary loss. It does not appear that the Plaintiffs responded to this argument.

To establish the tort of intentional infliction of emotional distress, a plaintiff must show that the defendant (1) engaged in extreme and outrageous conduct (2) that intentionally or recklessly (3) caused (4) severe emotional distress to another. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997). Furthermore, it is the intent to harm a person emotionally that constitutes the basis for this tort. *Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind. 1991). Indiana courts are reluctant to award emotional damages for pecuniary loss. *Cf. McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1167 (7th Cir. 1997) ("Indiana courts have been reluctant to award damages for intentional infliction of emotional distress in employment cases."); *Tacket v. Gen'l Motors Corp.*, 830 F. Supp. 468, 472 (S.D. Ind. 1993) ("[I]f the Supreme Court of Indiana were faced with this issue, it would conclude that when an employer breaches an ordinary employment contract . . . , even if the employer intended to cause the employee emotional harm

in breaching that agreement, emotional distress damages are not recoverable under a breach of contract claim."), *rev'd on other grounds*, 93 F.3d 332 (7th Cir. 1996); *Mehling v. Dubois County Farm Bur. Coop. Ass'n*, 601 N.E.2d 5, 9 (Ind. Ct. App. 1992) (tort of intentional infliction of emotional distress is unavailable in a breach of an employment-at-will contract case); *Comfax v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 127 (Ind. Ct. App. 1992) (economic loss is not sufficiently serious in nature and resulting emotional trauma is not of a kind and extent normally expected to occur in reasonable person, despite claims of mental anguish and attempted suicide; although economic loss may cause severe emotional distress, such distress does not compare to the loss of a loved one which may support a claim for recovery of emotional distress damages).

The Plaintiffs have failed to show that their claim against the NIPSCO Defendants for emotional distress is plausible. The Plaintiffs' allegations do not show that it is plausible, rather than merely speculative, that the NIPSCO Defendants intended to harm the Plaintiffs emotionally, and they have not shown their entitlement to relief against these Defendants on this claim. Consequently, the Court will grant the NIPSCO Defendants' Motion to Dismiss as to Count X and dismiss this count as alleged against them.


**N.      Exhaustion of Remedies**

The NIPSCO Defendants argue that "the basis for all of the Plaintiffs' claims is that the NIPSCO Defendants did not provide utility service in a timely-fashion upon request." (NIPSCO Defs.' Br. in Supp. 14, ECF No. 65.) They contend that the Plaintiffs are complaining about the provision and termination of utility services and that this conduct falls within the exclusive

jurisdiction of the Indiana Utility Regulatory Commission (IURC), citing *N. Ind. Pub. Serv. Co. v. Dozier*, 674 N.E.2d 977, 983–86 (Ind. Ct. App. 1996). They argue that the IURC has exclusive authority to establish rules and regulations to govern the relations between public utilities and their customers and to interpret and enforce its regulations. The Plaintiffs did not respond to this argument by the NIPSCO Defendants, and thus the Court does not have the benefit of an adversarial testing of this argument.

In considering the arguments made and the authorities cited by the NIPSCO Defendants, it is not readily apparent that the Plaintiffs' § 1983 conspiracy and civil RICO claims against the NIPSCO Defendants would come within the IURC's exclusive jurisdiction and require exhaustion. However, considering the Court's disposition in this Opinion and Order of the claims asserted by the Plaintiffs against the NIPSCO Defendants and the state of the record and briefing on this exhaustion issue, the Court will deny without prejudice this aspect of the NIPSCO Defendants' Motion to Dismiss.

## O.     Injunctive Relief

In the Prayer for Relief section of their First Amended Complaint, the Plaintiffs ask that the Court enjoin the Defendants to adopt effective remedial measures. The Lake County Defendants take issue with this request, arguing that the Court lacks subject matter jurisdiction to require the Defendants to take affirmative actions to conform their conduct to the Plaintiffs' interpretation of state law. In support, the Lake County Defendants point to *Younger* abstention, which the Court has already addressed in this Opinion and Order, and principles of federalism, citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).

At this time, the Court need not address this authority or the Plaintiffs' request for relief. The Plaintiffs' request is vague, especially when coupled with their more general request for all other just and equitable relief. In the event the time comes in this case for the Court to order relief, the Court will award relief that is authorized by law and consider any appropriate matters relative to the Eleventh Amendment and federalism. This request by the Lake County Defendants will also be denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Lake County Defendants' Motion to Dismiss [ECF No. 34] and GRANTS IN PART and DENIES IN PART the NIPSCO Defendants' Motion to Dismiss [ECF No. 64].

The Lake County Defendants' Motion to Dismiss is granted as to the following issue: the Plaintiffs' RICO claims (Counts IV and V). The Lake County Defendants' Motion to Dismiss is denied as to the following issues: statute of limitations on the Plaintiffs' § 1983 and state law claims; *Younger* abstention; the *Rooker-Feldman* doctrine; claim and issue preclusion; the Plaintiffs' § 1983 conspiracy claim (Count II); the Plaintiffs' equal protection claim (Count XI); qualified immunity; Indiana Tort Claims Act immunity; and injunctive relief. The Court ORDERS Counts IV and V against the Lake County Defendants DISMISSED.

The NIPSCO Defendants' Motion to Dismiss is granted as to the following issues: the Plaintiffs' § 1983 conspiracy claim (Count II); the Plaintiffs' RICO claim (Count V); the Plaintiffs' illegal conspiracy claim (Count VII); the Plaintiffs' negligence per se claim (Count VIII); the Plaintiffs' tortious interference claim (Count IX); and the Plaintiffs' emotional distress

claim (Count X). The NIPSCO Defendants' Motion to Dismiss is denied as to the following issue: exhaustion of administrative remedies. The Court ORDERS Counts II, V, VII, VIII, IX, and X against the NIPSCO Defendants DISMISSED. No claims remain pending against the NIPSCO Defendants.

The following claims remain pending in this action against the Lake County Defendants: Counts I, II, VI, VII, IX, X, and XI. Count III remains pending against the individual Lake County Defendants only.

SO ORDERED on September 30, 2010.

/s/ Theresa Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION